IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALBERT BUCHTAN, MELINDA BUCHTAN, STEPHEN PRATT, CRYSTAL PRATT, DANIEL SMITH, JOEY LYNN SMITH, JACKIE SHUPPE, and SCOTT SHUPPE, | CIVIL DIVISION |
| | NO. 2:25-CV-01728-DSC |
| | Judge David S. Cercone |
| Plaintiffs, | |
| | JURY TRIAL DEMANDED |
| v. | |
| GREENE COUNTY CHILDREN AND YOUTH SERVICES, BETH BOOKER, and JACQUELYN WIGGINS, | |
| Defendants. | |

**FIRST AMENDED COMPLAINT**

Plaintiffs Albert Buchtan, Melinda Buchtan, Stephen Pratt, Crystal Pratt, Daniel Smith, Joey Lynn Smith, Jackie Shuppe, and Scott Shuppe, by and through their respective undersigned counsel, hereby file their First Amended Complaint against Defendants Greene County Children and Youth Services, Beth Booker, and Jacquelyn Wiggins, and aver as follows:

**PARTIES**

1.  Albert Buchtan and Melinda Buchtan (the "Buchtans"), husband and wife, are natural persons domiciled in Greene County, Pennsylvania. Mr. Buchtan is a small-business owner and community leader. Mrs. Buchtan is a first-grade teacher in Greene County.

2.  Stephen Pratt and Crystal Pratt (the "Pratts"), husband and wife, are natural persons domiciled in Greene County, Pennsylvania. Mr. Pratt is a small-business owner and community leader. Mrs. Pratt is a fifth-grade teacher in Greene County.

3.  Daniel Smith and Joey Lynn Smith (the "Smiths"), husband and wife, are natural

1

persons domiciled in Greene County, Pennsylvania. Mr. Smith is a business owner and community leader. Mrs. Smith has been a middle school math teacher in Greene County for approximately 20 years.

4. Jackie Shuppe and Scott Shuppe (the "Shuppes"), husband and wife, are natural persons domiciled in Greene County, Pennsylvania. Mrs. Shuppe works in human resources. Mr. Shuppe works at the Iron Senergy coal mine in Greene County.

5. Greene County Children and Youth Services ("GCCYS") is an agency of Greene County established pursuant to section 405 of the act of June 24, 1937.

6. Beth Booker is a natural person domiciled in Greene County, Pennsylvania. Ms. Booker was the Administrator of GCCYS at all times relevant to this Complaint.

7. Jacquelyn Wiggins is a natural person domiciled in Greene County, Pennsylvania. Ms. Wiggins was an employee of GCCYS at all times relevant to this Complaint.

**JURISDICTION AND VENUE**

8. Paragraphs 1-7 of the First Amended Complaint are incorporated by reference as if set forth fully herein.

9. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

10. This Court has personal jurisdiction over GCCYS pursuant to 42 Pa.C.S. § 5301(a)(3) because GCCYS carries on a continuous and systematic part of its general business in Pennsylvania.

11. This Court has personal jurisdiction over Ms. Booker and Ms. Wiggins pursuant to 42 Pa.C.S. § 5301(a)(1) because Ms. Booker and Ms. Wiggins are domiciled in Pennsylvania.

12. This Court has venue pursuant to 28 U.S.C. § 1391(b)(1) because Ms. Booker and Ms. Wiggins reside in this judicial district and all defendants are residents of the Commonwealth of Pennsylvania. This Court also has venue pursuant to 28 U.S.C. § 1392(b)(1) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this judicial district.

## FACTUAL ALLEGATIONS

13. Paragraphs 1-12 of the First Amended Complaint are incorporated by reference as if set forth fully herein.

14. The Board of the Carmichaels Area School District (the "School Board") is the governing body for the Carmichaels Area School District in Greene County, Pennsylvania (the "School District").

15. Mr. Pratt was elected to the School Board in November 2021 for a four-year term.

16. Mr. Buchtan was elected to the School Board in November 2023 for a four-year term.

17. Mr. Smith was appointed to the School Board in January 2024 following the resignation of another board member. He was elected in November 2025 for a four-year term.

18. Mrs. Shuppe was elected to the School Board in November 2023 for a four-year term.

19. In December 2023 and into early 2024, members of the School Board, led by Mr. Buchtan and Mr. Pratt, along with Mr. Smith and Mrs. Shuppe, began making detailed inquiries into the School District's budget and finances.

20. The School Board members leading these inquiries almost immediately found themselves in conflict with the School District's business manager, who they believed was limiting

their access to financial records in order to conceal mistakes in financial reports and the extent of the School District's potential budgetary shortfall.

21. As these School Board members continued their inquiries, their conflict with the School District's business manager escalated to the point that she ceased attending the School Board's public meetings. The School Board contemporaneously began taking steps toward her termination.

22. On April 5, 2024, within days of the School Board initiating adverse employment action against the School District's business manager, GCCYS received reports alleging that those School Board members who had minor children enrolled in the School District and who had supported adverse action as to the business manager and their spouses (including the Buchtans, Pratts, Smiths, and Shuppes) would use cocaine in the presence of their minor children (the "Reports").

23. Defendants knew or should have known upon receipt of the Reports that they were false and retaliatory. Plaintiffs are informed and believe that Defendants were told by the School District's resource officer that same day that each of the minor children named in the Reports belonged to a School Board member. Plaintiffs are further informed and believe that Defendants were aware of the School Board's inquiries into the School District's budget and finances and its related conflict with the School District's business manager. Those matters were discussed in agendas and meeting minutes published on the School District's website and/or public meetings archived on YouTube.

24. In addition, the School District's business manager is married to the former deputy administrator of GCCYS, who at the relevant time was leading a sister agency under the umbrella of the Greene County Commission. The Reports also failed to identify pre-school-age children of

4

certain of the Plaintiffs, indicating that they were submitted by an individual who did not have personal knowledge but rather had access to the School District's records. In addition, the School District's business manager had been seen on video camera entering the School District's building after-hours and examining documents at or around this same time.

25. Despite having reason to doubt the veracity of the Reports, GCCYS appeared at the Buchtans' and Pratts' homes on April 9, 2024 (as well as the homes of two other School Board members who had supported adverse action as to the business manager) to investigate the complaints. On the same day, GCCYS also appeared at the Smiths' and Shuppes' homes to investigate the complaints.

26. When GCCYS arrived at the Buchtans' home on April 9, 2024, Mr. and Mrs. Buchtan were at home with their 12-year-old daughter. Ms. Wiggins and another GCCYS employee, whose identity is currently unknown to Plaintiffs, first found Mr. Buchtan in the family garage, where one of them accused Mr. Buchtan of using and selling cocaine. They further threatened him that he would go to jail, and his children could be removed if he did not submit to a drug test. Ms. Wiggins and the other GCCYS employee took the Buchtans' 12-year-old daughter to the family living room for a private interview, during which they pressured her to report being malnourished and having witnessed drug activity. Mr. Buchtan was then subjected to two drug tests, both of which came back negative. Around this time, Mr. Buchtan called Greene County Commissioner Besty McClure to inform her that he was being subject to an illegal and retaliatory drug test and investigation by GCCYS to which she responded with disbelief. Shortly thereafter, Ms. Wiggins received a telephone call and immediately then informed the Buchtans that they would be leaving without speaking to the Buchtans' other daughter, who was away from the home at the time, as they knew what had happened.

5

27. When GCCYS arrived at the Pratts' home on April 9, 2024, Mrs. Pratt was home alone. The GCCYS caseworker, known only as "Chris," asked Mrs. Pratt if they had food and running water, took pictures of the Pratts' kitchen and son's bedroom, and informed Mrs. Pratt that he would need to return the following day to perform a drug test of Mr. Pratt.

28. When GCCYS returned to the Pratts' home on April 10, 2024, the caseworker demanded to see the Pratts' son but said that they would no longer be requiring him to submit to a private interview or Mr. Pratt to submit to a drug test. "Chris" then apologized to Mrs. Pratt, telling her that the case was unfounded, and left the home.

29. When two (2) representatives of GCCYS (including Ms. Wiggins) arrived at the Smiths' home on April 9, Mr. Smith was at the School District for a meeting and therefore not home. GCCYS did speak with Mrs. Smith at the home.

30. GCCYS was accusatory, demanding, and confrontational for an interview that lasted more than 60 minutes. Specifically, Mrs. Smith was told by GCCYS that Mr. Smith needed to immediately submit to a drug test, and that if he did not, it would be considered an automatic failure, and the Smiths' children would be removed from the home.

31. Mrs. Smith explained that she was a long-time teacher at the School District, and through her experience with GCCYS as a teacher, she never experienced GCCYS acting in such a demanding and accusatory manner.

32. By the time that GCCYS left the Smiths' home, one of the GCCYS' representatives had apologized, was on the verge of tears, and stated that she did not know why GCCYS was even pursuing the matter.

33. On April 9, one (1) representative of GCCYS also arrived at the Shuppes' home. Mrs. Shuppe was working at the time and not home. Mr. Shuppe was home with their two (2)

children – who were 2 and 6 years old at the time. GCCYS told Mr. Shuppe that the investigation was related to alleged substance abuse by Mrs. Shuppe.

34. Mrs. Shuppe returned from work, and after learning that GCCYS was at Mr. Buchtan's home, she drove to Mr. Buchtan's home, who lives nearby. Mrs. Shuppe was told by GCCYS that she had to submit to a drug test, and that if she did not, it would be considered a positive test and her children removed from the home.

35. On the following days, the GCCYS caseworker returned to the Shuppes' home, confirmed that the Shuppes had food and running water and took pictures of the bedrooms belonging to their minor children. The GCCYS caseworker also asked for hardcopy photographs of the children. GCCYS stated at that time that it had no Report or record related to the Shuppes' non-school aged child.

36. On April 12, 2024, Mrs. Shuppe spoke to Beth Booker by telephone. Mrs. Booker told Mrs. Shuppe that all four school members were listed on the same Report, and that it was very "weird" that four people from the same place were identified in the same Report with more significant detail than is typical. Mrs. Booker referenced on two (2) separate occasions that the initial phone call wherein the Report was made was "weird."

37. On April 12, 2024, Mrs. Shuppe also spoke to "John" who identified himself as the regional director of CYS. Mrs. Shuppe requested that the photographs of her children's bedrooms be removed from GCCYS' database given the strong inference that the initial Reports themselves appeared to emanate from someone at GCCYS or connected with GCCYS in some capacity. After explaining the situation further to John, John stated that he would immediately secure the Reports of all Plaintiffs so that only a limited number of people (including Beth Booker) would be able to access the information going forward.

38. On April 16, 2024, both Mr. Smith and Mrs. Shuppe sent GCCYS a letter advising that a false report had been submitted against them and requested a copy of their respective Reports pursuant to 23 Pa.C.S.A. § 6340(b).

39. On April 19, 2024, the Buchtans and Pratts sent GCCYS a letter through counsel demanding that it cease and desist any further investigation into the Reports, provide copies of their investigation files, and preserve all evidence related to the investigations.

40. During this time period, Mr. Smith was also attempting to get additional information on the submission of the false Reports. One of the people he spoke to was Jared Edgreen, who was and is the Chairman for the Greene County Board of Commissioners, which is ultimately responsible for the daily activities and administration of GCCYS.

41. On April 25, 2024, after asking Mr. Smith how his family was doing during this troubling ordeal, Mr. Edgreen texted Mr. Smith and stated, "I hate that ww [sic] are so limited on what we can do, and to top it off, what we did know I couldn't tell you."

42. To this day, Mr. Edgreen has not told Mr. Smith what he did know about the Reports or the initial call to GCCYS.

43. Shortly after the false Reports were filed, GCCYS closed its investigations into the Plaintiffs without any finding of child endangerment.

44. Upon information and belief, despite knowing that the reports were false, GCCYS has destroyed its records related to the investigations into the Plaintiffs without notice or opportunity to the Plaintiffs to make copies of the same.

### COUNT I – FIRST AMENDMENT RETALIATION

45. Paragraphs 1-44 of the First Amended Complaint are incorporated by reference as if set forth fully herein.

46. Under 42 U.S.C. § 1983, "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

47. Defendants at all times relevant to this First Amended Complaint were persons acting under color of state law for purposes of section 1983. Plaintiffs are informed and believe that Defendants were acting pursuant to a policy or custom established by the GCCYS administrator, Ms. Booker, for the investigation of reports.

48. Plaintiffs at all times relevant to this First Amended Complaint were citizens of the United States or persons within the jurisdiction thereof.

49. Under the First Amendment to the United States Constitution, as incorporated to the states through the Fourteenth Amendment to the United States Constitution, Plaintiffs are guaranteed the right to freedom of speech.

50. Mr. Buchtan, Mr. Pratt, Mr. Smith, and Mrs. Shuppe engaged in speech protected by the First Amendment where they advocated for, voted to take, and/or took employment action adverse to the School District's business manager in their capacities as members of the School Board.

51. Defendants retaliated against Plaintiffs for their protected First Amendment activity by subjecting Plaintiffs to a sham child-endangerment investigation, the threat and/or performance of which would be sufficient to deter persons of ordinary firmness from exercising their First Amendment rights.

52. A causal nexus exists between Plaintiffs' protected First Amendment activity and the submission and/or investigation of the Reports where the Reports were submitted within days of Plaintiffs' protected First Amendment activity and targeted each School Board member who acted accordingly (with the exception, however, of a single School Board member who did not have children in the School District at the time).

**WHEREFORE**, Plaintiffs demand judgment against Defendants, jointly and severally, in an amount in excess of $1,000,000.00, together with such further relief as the Court deems just and proper, including punitive damages, costs, interest, and delay damages.

### COUNT II – FOURTH AMENDMENT SEARCH AND SEIZURE

53. Paragraphs 1-52 of the First Amended Complaint are incorporated by reference as if set forth fully herein.

54. Under 42 U.S.C. § 1983, "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

55. Defendants at all times relevant to this First Amended Complaint were persons acting under color of state law for purposes of section 1983. Plaintiffs are informed and believe that Defendants were acting pursuant to a policy or custom set forth in a Urine-Drug Screening Policy created on or about November 14, 2022.

56. Plaintiffs at all times relevant to this First Amended Complaint were citizens of the United States or persons within the jurisdiction thereof.

57. Under the Fourth Amendment to the United States Constitution, as incorporated to the states through the Fourteenth Amendment to the United States Constitution, Plaintiffs are guaranteed the right to be free from unreasonable searches and seizures.

58. Plaintiffs were subjected to searches of their homes by Defendants in the course of the investigation of the false Reports. Additionally, Mr. Buchtan was subjected to a search where he was forced to take a warrantless drug test. *Smith v. Northampton Cnty.*, No. 22-3788, 2023 WL 1767765, at *6 (E.D. Pa. Feb. 3, 2023). Ms. Wiggins and the other GCCYS employee threatened Mr. Buchtan with jail time and removing his children from the home if he did not comply with their demands to take the drug test.

59. The searches were unreasonable where the Reports were submitted within days of Plaintiffs' protected First Amendment activity and targeted each School Board member who acted accordingly (with the exception, however, of a single School Board member who did not have children in the School District at the time) and where, moreover, each Report contained identical allegations of illegal drug use. Additionally, in the case of the warrantless drug test required of Mr. Buchtan, the Pennsylvania Supreme Court has expressly held that the Child Protective Services Law does not include the authority to obtain an involuntary urine sample from the subject of the investigation. *In the Interest of D.R.*, 659 Pa. 319, 232 A.3d 547 (2020).

**WHEREFORE**, Plaintiffs demand judgment against Defendants, jointly and severally, in an amount in excess of $1,000,000.00, together with such further relief as the Court deems just and proper, including punitive damages, costs, interest, and delay damages.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: December 15, 2025 | By: */s/ Erin Lucas Hamilton* |

Erin Lucas Hamilton, Esquire
Pa. ID No. 93852
Joseph V. Schaeffer, Esquire
Pa. ID No. 323256
Francesca Iovino, Esquire
Pa. ID. No. 324229

BABST, CALLAND, CLEMENTS
and ZOMNIR, P.C.
Firm #812
Two Gateway Center, 8th Floor
603 Stanwix Street
Pittsburgh, PA  15222

(412) 773-8705 – Phone
(412) 773-8742 – Fax
ehamilton@babstcalland.com
jschaeffer@babstcalland.com
fiovino@babstcalland.com

*Counsel for Plaintiffs, Albert Buchtan, Melinda Buchtan, Stephen Pratt, and Crystal Pratt*

-and-

METZ LEWIS BRODMAN MUST O'KEEFE LLC

*/s/ Joshua D. Baker*
Joshua D. Baker (PA 308243)
444 Liberty Avenue, Suite 2100
Pittsburgh, PA 15222
Phone: (412) 918-1100
Fax: (412) 918-1199
jbaker@metzlewis.com
*Counsel for Plaintiffs, Daniel Smith, Joey Lynn Smith, Jackie Shuppe, and Scott Shuppe*